Roland NEWMAN, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 84–1033.

United States Court of Appeals, Eighth Circuit.

Submitted June 20, 1984.

Decided Oct. 3, 1984.

Troy R. Douglas, Douglas & Douglas, Fort Smith, Ark., for petitioner.

Diane Hodes, Washington, D.C., for respondent.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

**1164**

PER CURIAM.

Roland Newman filed a claim for black lung benefits with the Department of Labor in September, 1973, pursuant to section 415[1] of the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 (1982). Newman, whose primary occupation in the years preceding World War II had been coal mining, alleged that he had been totally disabled since April, 1973, due to pneumoconiosis arising out of his mine employment. An administrative law judge (ALJ) conducted a hearing on the claim in October, 1980, and subsequently issued a decision adverse to Newman. Newman then appealed to the Department of Labor's Benefits Review Board (BRB). The BRB affirmed the ALJ's decision, and Newman appealed directly to this court, in accordance with 30 U.S.C. § 932(a) (1982), incorporating 33 U.S.C. § 921(c) (1982). We remand for further administrative proceedings.

■■■ We note at the outset that our review of BRB decisions is limited:

"The court of appeals scrutinizes Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." [Citations omitted.] The Board's function is similarly limited. It is not empowered to engage in *de novo* review but rather is limited to reviewing the ALJ's decision for errors of law and to determine whether the factual findings are supported by substantial evidence in the record as a whole. 33 U.S.C. § 921(b)(3); 20 C.F.R. § 802.301.

*Director v. Rowe,* 710 F.2d 251, 254 (6th Cir.1983). Despite the limited nature of this role, we are cognizant that Congress

clearly intended that the black lung entitlement program be "liberally construed in favor of the miners to insure compensation in worthy cases despite the extreme difficulty of proving the existence of clinically certain medical evidence." *Bozwich v. Mathews,* 558 F.2d 475, 479 (8th Cir.1977) (discussing legislative history); *see Parker v. Director,* 590 F.2d 748, 750 (8th Cir. 1979). The Senate report accompanying the 1972 amendments to the black lung program noted that "[t]he Black Lung Benefits Act of 1972 is intended to be a remedial law * * *. In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivors." S.Rep. No. 743, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.Code Cong. & Ad.News 2305, 2315.[2]

Reviewing the administrative record and decisions with the above principles in mind, we conclude that the following errors necessitate remand:

### 1. Cause of Newman's respiratory symptoms.

■■■ In her decision, the ALJ found that:

[The credible medical evidence does not establish] the presence of any significant respiratory condition. The record does establish that the claimant has a long standing cardiac condition and it is inferred from this record that it was this condition which caused the symptoms of which the claimant complains, exertion on any effort [sic] breathlessness, difficulty breathing at night, and that it was his cardiac condition that was responsible for his curtailment of his work activities in 1973 and 1976.

---

1. 30 U.S.C. § 925 (1982).

2. The black lung disability benefit program, originally enacted as title IV of the Federal Coal Mine Health and Safety Act of 1969, Pub.L. No. 91–173, 83 Stat. 742 (codified as amended in scattered sections of 15 U.S.C. and 30 U.S.C.), was substantially amended in 1972, 1978, and 1981. The 1972 and 1978 amendments liberalized the program, primarily in response to what Congress perceived as excessively rigid administrative implementation. *See* H.Rep. No. 151,

95th Cong., 1st Sess. (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 237; S.Rep. No. 743, *supra.* The 1981 amendments, prompted by a growing deficit in the Black Lung Disability Trust Fund, were restrictive, but were expressly confined in applicability to claims filed after January, 1982. The 1981 amendments do not apply to Newman's claim. For a review of the history of the black lung benefit legislation, see Lopatto, *The Federal Black Lung Program: A 1983 Primer,* 85 W.Va.L.Rev. 677 (1983).

The ALJ's conclusion that Newman's respiratory symptoms resulted from heart disease lacked substantial support on the record. Newman testified at the administrative hearing that he had had heart attacks in 1961 and 1962, and that he had undergone open heart surgery in March, 1980. But Newman further testified that his respiratory symptoms, including coughing up coal dust, had first appeared in the 1940s, and had "led to" heart disease. We note that pneumoconiosis is a progressive disease which (according to medical testimony accepted by Congress) is difficult for miners and doctors to identify. All reasonably recent medical opinions of record attribute Newman's respiratory symptoms to chronic lung disease arising out of coal mine employment; no medical reports of record suggest that these symptoms were caused by heart disease. Dr. Earl Woodson and Dr. Frank Bradley opined in the medical reports they submitted that Newman's heart disease was secondary to pneumoconiosis.

Whether heart disease caused Newman's respiratory symptoms, or whether the heart disease resulted from coal mine-related pneumoconiosis is a question that calls for medical expertise, as well as firsthand knowledge of Newman's condition and medical history. The ALJ arrived at her own answer to this question, and relied significantly on that answer in denying Newman's claim. This was error. The Third Circuit has observed, on facts very similar to these, that "[w]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him." *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978); *accord Peabody Coal Co. v. Director*, 581 F.2d 121, 124 (7th Cir.1978); *cf. Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975) (social security disability insurance claim).

On remand, administrative decisionmakers should re-evaluate the claim, without speculating about medical matters. If additional medical evidence is needed to clarify the causes and effects of Newman's heart disease, administrative personnel should attempt to obtain such evidence, either from Dr. Prewitt, Newman's treating physician, or from an examining consultant. 20 C.F.R. §§ 718.101, 718.401, 725.405, 725.456(e) (1983).[3]

## 2. Pulmonary function study results.

■ The ALJ, in reaching her decision, relied significantly on a 1979 pulmonary function study, and rejected as "not reliable" a 1976 pulmonary function study. Although the ALJ was responsible for weighing the evidence, her analysis of these studies was inadequate. The 1976 test, which was performed at the request of the Department of Labor, presumably by technicians and under conditions acceptable to the Department, produced results which, had the ALJ accepted them, would have established Newman's total disability under 20 C.F.R. § 718.204(c)(1) (1983). The study done in 1979, on the other hand, was terminated prematurely when Newman began complaining of a blackout sensation. While the 1979 test result would not have established total disability under 20 C.F.R. § 718.204(c)(1), nothing in the record suggests that the result was indicative of normal respiratory function. In *Bozwich v. Mathews, supra*, we rejected the idea that an "inference" of non-disability automatically arises when a pulmonary function study result fails to qualify a miner for regulatory presumptions of total disability. The ALJ's analysis apparently rests on just such an inference; hence, the test results require re-evaluation in the context of the record as a whole. An informed medical interpretation of the 1979 test might be helpful in this regard.

---

**3.** Upon medical advice, Newman, in 1980, signed a "Waiver of Blood Gas Test" form, stating that he was unable to take such a test because of "heart, lung and x-ray radiation trouble." There is no indication Newman could not, or would not, undergo a physical examination, if administrative personnel felt this was necessary to a fair decision on the claim.

**1166**

### 3. Medical opinions.

Newman alleges that his disability began in April, 1973. All medical reports of physical examinations performed after that date support Newman's claim of pneumoconiosis. Dr. L.G. Pillstrom, who examined Newman in 1976 at the request of the Department of Labor, opined that Newman suffered from chronic obstructive lung disease, and that the disease was related to coal mine employment. Dr. Frank Bradley and Dr. Earl Woodson, who saw Newman in late 1979 or early 1980, both diagnosed pneumoconiosis and heart disease secondary to pneumoconiosis. Dr. Bradley and Dr. Woodson stated that Newman was totally and permanently disabled; they further opined that the disability resulted from coal mine-related pneumoconiosis.

The ALJ rejected the above medical opinions, concluding that the physicians were biased and less than thorough, and that the reports were not of sufficient quality to warrant credence. The analysis, however, does not stop at this point; rather, the ALJ should have considered further whether the Department of Labor had discharged all of its administrative responsibilities established under the Black Lung Benefits Act. Even assuming that the opinions were, as the ALJ alleged, totally unreliable, administrative personnel ought to have informed Newman of his statutory right to have the Department of Labor arrange, and pay for, a complete pulmonary evaluation. 30 U.S.C. § 923(b) (1982); *Prokes v. Mathews*, 559 F.2d 1057, 1063 (6th Cir.1977). We cannot say that the Department of Labor fulfilled its responsibility for providing a complete pulmonary evaluation by arranging to obtain an informed medical opinion regarding Newman's condition, but then rejecting that opinion as not credible. On remand, administrative personnel should either accept the import of the medical opinions of record, or obtain a more reliable medical opinion.

After thorough consideration of the case, we remand for further administrative proceedings consistent with this opinion.