803 F.2d 934
 Mary BRAZZALLE, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, as Designee of Raymond
Donovan, Secretary of Labor, Respondent.
 No. 84-1989.
 United States Court of Appeals,
Eighth Circuit.
 Submitted July 16, 1986.
Decided Oct. 16, 1986.
 
 I. John Rossi, West Des Moines, Iowa, for petitioner.
 J. Michael O'Neill, Jeffrey J. Bernstein and Joseph T. Bednarik, Washington, D.C., for respondent.
 Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 Mary Brazzalle (claimant) appeals an ALJ's decision denying her benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901-41 (1986), for the disability of her deceased husband, Raymond J. Brazzalle, prior to his death. The ALJ denied her benefits under 20 C.F.R. Sec. 727.203(a)(4) (1986) on the ground that medical testimony offered to establish a disability due to black lung disease (pneumoconiosis) was not based on "reasoned medical judgment." We affirm.
 
 
 2
 Mr. Brazzalle was born on April 17, 1914. He was employed as a miner for coal mining companies near Centerville, Iowa, in the late 1930s and at other times from 1956 to 1967. Subsequently, Mr. Brazzalle worked as a punch machine operator for Fuller Manufacturing Co. until November of 1976 when he was layed off.
 
 
 3
 In 1973, Dr. Stephen S. Jewett, a general practitioner, examined Mr. Brazzalle for an insurance company. At that time, Dr. Jewett concluded that Mr. Brazzalle was not suffering from a disabling pulmonary or respiratory impairment.
 
 
 4
 Mr. Brazzalle first filed a claim for black lung benefits on December 26, 1973, under 30 U.S.C. Sec. 925 (1986). On May 14, 1974, an x-ray and a ventilatory study were administered to Mr. Brazzalle. Neither test revealed abnormal lung impairment. On April 9, 1975, the Department of Labor denied Mr. Brazzalle's claim.
 
 
 5
 On September 8, 1976, Dr. Jewett again examined Mr. Brazzalle. In a letter of September 9, 1976, Dr. Jewett summarized the results: The chest was reported to be symmetrical. A mild systolic type of hypertension, tachycardia, and a grade 1-4 systolic murmur were present. An occasional rhonchi in both lung fields was heard but no respiratory wheezing. No clubbing of the fingers, cyanosis of the extremities or pedal edema was evident. Urinalysis was normal and hct. was 45%. He weighed 172 pounds and was 5'4" inches in height.
 
 
 6
 During the examination Mr. Brazzalle reported to the doctor that he had increasing shortness of breath and a chronic cough over the years. He stated his breathing had recently become worse. He stated that although he had no difficulty breathing at rest or at nighttime, he could not push a lawnmower, walk up a flight of stairs, or walk a city block without shortness of breath. Dr. Jewett concluded the letter stating that in his "opinion, this patient has a form of chronic lung disease and chronic form of bronchitis with mild respiratory impairment."
 
 
 7
 On May 16, 1977, Mr. Brazzalle died. On his certificate of death, the cause of death was stated as "acute myocardial infarction" or heart attack.
 
 
 8
 The claim now on appeal began when claimant filed for benefits under the Black Lung Benefits Act as a dependent of Raymond Brazzalle on July 26, 1979. The Director of the Office of Workers' Compensation Programs (Director) denied her benefits. A formal hearing was held on December 3, 1980, after which ALJ Arthur C. White determined that the testimony of Dr. Jewett (admitted in deposition form) was sufficient to establish that the disability of claimant's deceased husband prior to his death was due to pneumoconiosis.
 
 
 9
 On June 11, 1984, the Benefits Review Board of the Department of Labor, reversed ALJ White's decision, stating that Dr. Jewett's testimony was too equivocal to support a finding that Mr. Brazzalle's disability was due to coal dust inhaled while working in a mine. Claimant appealed the Benefits Review Board decision to this Court. On May 15, 1985, this Court issued an order requiring an ALJ to determine on remand whether Mr. Brazzalle had been totally disabled "by a respiratory or pulmonary impairment within the meaning of 20 C.F.R. Sec. 727.203(a)(4), or any other applicable regulation, at or prior to the date of his death."[1] The order also allowed claimant and the Director to depose Dr. Jewett with regard to establishing total disability under 20 C.F.R. Sec. 727.203(a)(4). Using the additional testimony in claimant's interrogatories and the Director's deposition of Dr. Jewett, ALJ G. Marvin Bober held that claimant was not entitled to benefits. Appeal of this decision is presently before this Court.
 
 
 10
 The pertinent regulation, section 727.203(a), states:
 
 
 11
 A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:
 
 
 12
 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis * * *.
 
 
 13
 (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease * * *.
 
 
 14
 * * *
 
 
 15
 * * *(3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood * * *.
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment * * *.
 
 
 19
 Reasoned medical judgment has been defined in personal injury cases as a hypothesis representing a physician's professional judgment "as to the most likely one among the possible causes of the physical condition involved." Norland v. Washington General Hospital, 461 F.2d 694, 697 (8th Cir.1972) (per curiam). This definition has been accepted in litigation under the Black Lung Benefits Act. See Underhill v. Peabody Coal Co., 687 F.2d 217, 223 (7th Cir.1982) (citing Kirschner v. Broadhead, 671 F.2d 1034, 1039-40 (7th Cir.1982)). Therefore, if Dr. Jewett's opinion does not adequately explain why Mr. Brazzalle more likely was disabled due to pneumoconiosis, as opposed to any other ailment, the ALJ could not consider it reasoned medical judgment.
 
 
 20
 In reviewing the ALJ's determination under section 727.203(a)(4) we must use the substantial evidence test. 30 U.S.C. Sec. 923(b) (incorporating 42 U.S.C. Sec. 405(g) of the Social Security Act); see Peabody Coal Co. v. Benefits Review Board, 560 F.2d 797, 801-802 (7th Cir.1977). That is, we must ask whether the ALJ examined the evidence and provided a satisfactory explanation of the decision including a "rational connection between the facts found and the choice made." See Citizens State Bank of Marshfield v. FDIC, 718 F.2d 1440, 1444 (8th Cir.1983) (citations omitted). Applying the test to this case, it is apparent the ALJ's determination that Dr. Jewett did not base his decision on reasoned medical judgment is supported by substantial evidence.
 
 
 21
 Two depositions of Dr. Jewett were taken in this matter, one by the claimant's attorney on December 3, 1980, for the initial hearing, and one by the Director, on August 29, 1985, for the record on remand. Analysis of the two depositions and other evidence submitted shows that viewed in light of the entire record, Dr. Jewett's diagnosis of Mr. Brazzalle's condition was both inconclusive and inconsistent. Furthermore, the diagnosis of Dr. Samuel V. Spagnolo,[2] a board-certified specialist in pulmonary diseases consulted by the Department of Labor, casts serious doubt on Dr. Jewett's diagnosis of Mr. Brazzalle's condition before he died.
 
 
 22
 First, Dr. Jewett did not conduct any ventilatory studies, arterial blood gas studies, or chest x-rays in examining Mr. Brazzalle. Moreover, Dr. Jewett did not have access to the x-ray and ventilatory study done in 1974. Such a lack of testing is not fatal under section 727.203(a). It shows, however, that Dr. Jewett was unaware of whether Mr. Brazzalle's respiratory or pulmonary condition, as indicated by these tests, had deteriorated after those tests had been performed.
 
 
 23
 Second, Dr. Jewett relied on statements made to him by Mr. Brazzalle which are contradicted by other evidence. For example, although Mr. Brazzalle complained of a chronic cough, neither Dr. Jewett nor anyone testifying at the hearing, including claimant, noted that Mr. Brazzalle suffered from a chronic cough. Dr. Jewett admitted that in most instances of respiratory impairment, "there will be a cough of some sort."
 
 
 24
 Third, in his diagnosis, Dr. Jewett relied on Mr. Brazzalle's statements that he had no difficulty breathing at rest or at nighttime, i.e., that he did not have orthopnea. According to Dr. Jewett, an absence of orthopnea was "very, very important" in his diagnosis that Mr. Brazzalle suffered from a lung impairment and not heart disease. Testimony at the hearing by claimant, however, suggested that Mr. Brazzalle did indeed suffer from orthopnea. In the second deposition, after being confronted about the possible presence of orthopnea, Dr. Jewett conceded that he might have to reexamine his notes and use his "clinical ability" to reevaluate his initial diagnosis.
 
 
 25
 Finally, Dr. Spagnolo considered both Dr. Jewett's report and the additional information not initially considered by Dr. Jewett, including the 1974 x-ray and pulmonary studies, the absence of a chronic cough, and the presence of orthopnea. Dr. Spagnolo stated that Mr. Brazzalle's symptoms, including those actually noted by Dr. Jewett, amounted to "classic findings of early congestive failure," i.e., a form of heart disease, which eventually lead to Mr. Brazzalle's death in 1977. Dr. Spagnolo further concluded that even if there were a showing of mild chronic bronchitis, the tests conducted and the symptoms shown could not have been sufficiently severe to cause a total disability.
 
 
 26
 Dr. Spagnolo's evaluation may not establish the sole or even primary cause of Mr. Brazzalle's condition before death; however, when combined with the inconsistencies in Dr. Jewett's testimony, it does sufficiently discredit Dr. Jewett's diagnosis such that an ALJ might properly determine that it is not the "most likely" explanation of Mr. Brazzalle's disability prior to his death.
 
 
 27
 Thus, the record shows substantial evidence supporting the ALJ's conclusion that Dr. Jewett's opinion was not based on reasoned medical judgment. The decision of the ALJ must be affirmed.
 
 
 
 [1]
 The Department of Labor Benefits Review Board had reviewed ALJ White's decision under 20 C.F.R. Sec. 410, Subpart D (1986). Since the Director conceded on appeal that Mr. Brazzalle had worked ten years or more in a coal mine, the case could properly be considered under 20 C.F.R. Sec. 727.203(a)(4)
 
 
 [2]
 Dr. Spagnolo's opinion was contained in an August 7, 1985, letter to counsel for the Director. This letter was introduced in the August 29, 1985, deposition of Dr. Jewett by counsel for the Director. Claimant's counsel objected to introduction of the letter primarily on the ground that he did not have an opportunity to cross-examine Dr. Spagnolo at a hearing. This objection is without merit. On remand, claimant's counsel neither objected to a decision on the record without a hearing (where claimant's counsel could have possibly cross-examined Dr. Spagnolo), nor did claimant's counsel request an opportunity to depose Dr. Spagnolo