814 F.2d 514
 Robert WARE, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, as Designee of William
E. Brock, III, Secretary of Labor, Respondent.
 No. 86-2035.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1987.
Decided March 18, 1987.
 
 I. John Rossi, Des Moines, Iowa, for petitioner.
 Marta Kusic, Washington, D.C., for respondent.
 Before LAY, Chief Judge, HEANEY, Circuit Judge, and CAHILL,* District Judge.
 HEANEY, Circuit Judge.
 
 
 1
 Robert Ware appeals an administrative denial of benefits under the Black Lung Benefits Act. 30 U.S.C. Secs. 901-41 (1982 & Supp. III 1985) (BLBA). Ware contends he has a totally disabling pulmonary or respiratory impairment entitling him to recovery of benefits under the BLBA. We agree.
 
 
 2
 Ware is fifty-nine years old. He has a seventh grade education. He was last employed in approximately 1971 and was last employed in a coal mine in 1951. In the mines he worked seasonally for ten years crushing, shoveling, and hauling coal.
 
 
 3
 In July, 1973, Ware applied for benefits under the BLBA. The Director of the Office of Workers' Compensation Programs, Department of Labor (Director), denied his claim. After Ware's case was reopened in 1980, pursuant to 30 U.S.C. Sec. 945 (1982), the Director again denied Ware's claim. The case was referred to an Administrative Law Judge (ALJ), who, on March 8, 1984, denied Ware's claim after a hearing. Ware appealed to the Benefits Review Board which denied his claim on June 26, 1986. Ware timely petitioned this Court for review of the Benefits Review Board's decision.
 
 
 4
 The only substantive issue on appeal is whether a deposition and a medical report of Dr. Laurence K. Rasmussen establish the presence of a totally disabling respiratory or pulmonary impairment caused by Ware's exposure to coal dust. The Director contends Dr. Rasmussen's deposition and examination do not establish the presence of a totally disabling pulmonary or respiratory ailment because his opinion is insufficiently documented and is unreasoned. We note that Dr. Rasmussen was retained by the Department of Labor to examine Ware; he is considered an approved provider by the Department of Labor for the purpose of identifying black lung; and he had examined approximately 200 black lung claimants before examining Ware. We further note that the government did not see fit to attend Dr. Rasmussen's deposition.
 
 
 5
 Before addressing the sufficiency of Dr. Rasmussen's medical report and deposition, we must point out that our scrutiny of the Benefits Review Board's and the ALJ's decision is limited to review for errors of law and factual findings unsupported by substantial evidence. Newman v. Director, Office of Workers' Compensation Programs, 745 F.2d 1162, 1164 (8th Cir.1984) (per curiam) (citing 33 U.S.C. Sec. 921(b)(3) (1982)). In reviewing BLBA claims, however, this Court has repeatedly recognized Congress's intent that the BLBA be "liberally construed" to ensure payment to deserving claimants. See Bozwich v. Mathews, 558 F.2d 475, 478-79 (8th Cir.1977) (discussing legislative history).
 
 
 6
 With these general principles in mind, we turn to the provisions of the regulations promulgated pursuant to the BLBA which permit a doctor's medical diagnosis as evidence of a disabling respiratory or pulmonary impairment. See 20 C.F.R. Secs. 410.414(c), 718.202(a)(4), 727.203(a)(4) (1986). The Director contends that under any of these provisions, the testimony of Dr. Rasmussen cannot be considered sufficiently reasoned and documented to presume Ware had a respiratory or pulmonary impairment which arose out of coal mine employment. The Director, therefore, concedes Dr. Rasmussen's medical judgment can be analyzed under 20 C.F.R. Sec. 727.203(a)(4) (1986).
 
 
 7
 In cases such as this one where a miner has worked ten years or more in a coal mine,[1] section 727.203(a)(4) provides that the presence of a disabling pulmonary or respiratory impairment will be presumed if the claimant presents "medical evidence, including the documented opinion of a physician exercising reasoned medical judgment." The Director correctly observes that in examining the validity of a medical opinion the factfinder must view it "in light of the studies conducted and the objective indications upon which the medical opinion or conclusion is based." Director, Office of Workers' Compensation Programs v. Rowe, 710 F.2d 251, 255 (6th Cir.1983), cited with approval in Phillips v. Director, Office of Workers' Compensation Programs, 768 F.2d 982, 985 (8th Cir.1985). This does not mean, however, the factfinder may use the studies to form his or her own medical opinion and to substitute that opinion for the opinion of an expert. See Gober v. Matthews, 574 F.2d 772, 777 (3d Cir.1978).
 
 
 8
 The tests conducted in this case include four readings of three x-rays and two pulmonary function studies. A reading of an August 8, 1973, x-ray by a Department of Labor radiologist identifies no pulmonary impairment, although the radiologist noted that "the lung fields are emphysematous." A second x-ray on April 22, 1980, was read as negative by a Department of Labor radiologist, although the quality of the film was noted as "marginal." A third x-ray on April 4, 1983, was read by a Department of Labor radiologist who noted that the film quality was "very marginal" and that the result was not completely negative. This same x-ray was read as completely negative by another radiologist, and the film quality was not critized.
 
 
 9
 The first pulmonary function study was performed on August 8, 1973, displaying a FEV1 score of 72% with a predicted normal score of 83% or more and a MVV score of 94% of the predicted normal. These readings were interpreted by the administering physician as "essentially normal." The second pulmonary function study was performed on April 4, 1983, and it indicated a FEV1 of 99% of the predicted normal. The comments included with the test, however, note "there is a minimal obstructive lung defect," and "on the basis of this study, [a] more detailed pulmonary function testing may be useful if clinically indicated." The comments further note the result could be due to "poor test performance."
 
 
 10
 A review of Dr. Rasmussen's deposition testimony and medical report shows there is not substantial evidence to support the ALJ's conclusion that Dr. Rasmussen's medical judgment was insufficiently documented or unreasoned. Dr. Rasmussen fully documented Ware's employment and medical history, including Ware's smoking habit, diabetes, back injury, and calf injury. The doctor evaluated the patient's cough which produced a greenish sputum, his inability to walk a city block without losing his breath, and Ware's claims that he sleeps on two pillows at night to help him breath but does not wake up trying to catch his breath. In his physical examination of Ware, the doctor found no swelling of the ankles and found his vital signs and blood pressure normal. Ware's throat, heart, and abdomen showed nothing remarkable. Although some of these symptoms mentioned were based on Ware's statements to the doctor, nothing in the record suggests the doctor should not have believed Ware's statements.
 
 
 11
 Dr. Rasmussen also considered the 1973 and 1980 x-rays. He noted that the 1973 x-ray showed a "mild amount of chronic obstructive impairment." Finally, Dr. Rasmussen considered the 1973 pulmonary function studies. Dr. Rasmussen suggested that the results should be read as "at least subnormal" as opposed to "essentially normal" as interpreted by the administering physician.
 
 
 12
 In concluding Ware had a disabling pulmonary or respiratory impairment, Dr. Rasmussen primarily relied on Ware's employment history, medical history, and symptoms. The doctor did not believe the pulmonary function tests refuted his diagnosis. He stated that on "numerous occasions" he had examined patients where the tests did not indicate a pulmonary impairment, but where a physical examination coupled with medical and employment history would indicate an impairment. Such a conclusion is clearly permitted by the BLBA. Congress expressly permitted a finding of pulmonary impairment based solely on a doctor's reasoned medical judgment. Bozwich, 558 F.2d at 475. Moreover, Congress has recognized that tests and x-rays designed to detect pulmonary impairments caused by inhalation of coal dust are far from infallible, and, therefore, absent definitive medical conclusions, any doubts should be resolved in favor of the disabled miner or his or her survivor. Newman, 745 F.2d at 1164 (citing S.Rep. No. 743, 92d Cong., 2d Sess. (1972), reprinted in 1972 U.S.Code Cong. & Admin.News, 2305, 2315).
 
 
 13
 In this case, the results of the pulmonary function tests and the x-rays are far from definitive. The x-ray clarity was questioned in three of the interpretations, and even the 1983 pulmonary function tests with scores near normal were questioned by the administering physician as possibly indicating a pulmonary impairment. Clearly, Dr. Rasmussen's conclusion is not unreasonable merely because it reaches a conclusion which differs from that of equivocal test results.
 
 
 14
 Moreover, the Director does not point to material inconsistencies or errors in Dr. Rasmussen's testimony or medical examination. If there were errors in Dr. Rasmussen's diagnosis, the Director could have retained another physician to evaluate Dr. Rasmussen's diagnosis or even taken the opportunity to cross-examine Dr. Rasmussen at the deposition. See id. at 1166; see also Brazzalle v. Director, Office of Workers' Compensation Programs, 803 F.2d 934, 936-37 (8th Cir.1986). The Director did neither. Therefore, Dr. Rasmussen's diagnosis, based on Ware's medical history, employment history, and symptoms stands essentially unimpeached.[2]
 
 
 15
 As mentioned previously, the ALJ cannot attempt to subvert Dr. Rasmussen's opinion by substituting it with his own. See Gober, 574 F.2d at 777. The ALJ has done just that here. Thus, his finding is not supported by substantial evidence.
 
 
 16
 Finally, the Director has not presented evidence sufficient to rebut Ware's prima facie case of disability under section 727.203(a)(4). There is insubstantial evidence that Ware has been doing his usual coal mine work or comparable work; that Ware could do such work; that Ware does not have a pulmonary or respiratory impairment; or that Ware's impairment did not arise out of coal mine employment. See 20 C.F.R. Sec. 727.203(b).
 
 
 17
 Therefore, we reverse and remand this case for payment of benefits to Ware from the date of his disability.
 
 
 
 *
 The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 The Director does not respond to Ware's preliminary contention that Ware worked ten years or more in the coal mines. See section 727.203(a). Therefore, we assume Ware did work ten years or more in the coal mines
 
 
 [2]
 The Director argues that Dr. Rasmussen did not make a statement on Ware's disability until the deposition which occurred shortly before the hearing. Without a statement of disability, the Director would have had no reason to contest Dr. Rasmussen's opinion because without the presence of a disability, the presumption in section 727.203(a)(4) would not be invoked. Therefore, the Director claims, when the agency had sufficient time, it did not have reason to contest Dr. Rasmussen's opinion. We find this excuse inadequate. In his medical report, Dr. Rasmussen states that Ware "does appear disabled due to coal dust exposure." Clearly this statement comments on Ware's disability