31 F.3d 678
 Philip V. BARNES, Claimant-Petitioner,
v.
ICO CORPORATION and Old Republic Insurance Company,
Employer/Carrier Respondents,
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Respondent.
 No. 93-3760.
 United States Court of Appeals, Eighth Circuit.
 Submitted June 14, 1994.
Decided Aug. 3, 1994.
 
 I. John Rossi, Des Moines, IA, argued, for petitioner.
 Mark E. Solomons, Washington, DC, argued (Laura Metcoff Klaus, Patricia M. Nece and Rodger Pitcairn, on the brief), for respondent.
 Before: WOLLMAN, Circuit Judge, and F. GIBSON and WELLFORD*, Senior Circuit Judges.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 Philip V. Barnes ("Barnes" or "claimant") seeks benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901, et seq. Barnes filed a timely claim for benefits in May of 1975 when he was sixty-two years old.[1] Barnes testified that he began his coal mine employment in 1934 and worked intermittently in coal mining until 1975. He was, therefore, actively working until the time of his claim. Barnes worked for various coal operators before beginning employment with the defendant ICO Corporation ("ICO") in 1974.[2] The administrative law judge ("ALJ") found that Barnes had been working in coal mine employment for at least fifteen years at the time of his claim. The ALJ also found that ICO "was properly designated the responsile [sic] operator" under the Act if Barnes prevailed on his claim of entitlement. There were several years of delay before the Department of Labor named ICO as the party potentially liable under the Act.[3]
 
 
 2
 ICO denied that Barnes was entitled to recover from it as a responsible operator and the issue of Barnes' entitlement and ICO's liability were presented to the ALJ at a hearing. Barnes has the burden of proving his eligibility for black lung benefits by a preponderance of the relevant evidence. Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 158, 108 S.Ct. 427, 439, 98 L.Ed.2d 450 (1987). The claimant must then establish: (a) total disability; (b) that disability was caused "at least in part by pneumoconiosis;" and (c) that "disability arose out of coal mine employment." Mullins, 484 U.S. at 141, 108 S.Ct. at 431. Since Barnes was found to have worked in such employment for fifteen years, the aforesaid conditions for eligibility are initially presumed if he can show any of the following: (1) x-ray confirmation of pneumoconiosis; (2) ventilatory studies' indication of "respiratory or pulmonary disease--not necessarily pneumoconiosis--of a specified severity;" (3) blood gas studies evidencing an impairment; or (4) "other medical evidence, including the documented opinion of a physician exercising reasonable medical judgment ... of a totally disabling respiratory impairment." Mullins, 484 U.S. at 141-42, 108 S.Ct. at 431; see also Sec. 727.203(a).[4]
 
 
 3
 ICO could rebut any established presumption by presenting "relevant medical evidence" to the contrary, or by showing that "claimant is doing or is capable of doing his usual or comparable work," or that his disability, if any, did not arise out of coal mining, or, finally, that claimant did not have pneumoconiosis. Mullins, 484 U.S. at 143-44, 108 S.Ct. at 432. The claimant retains the burden of persuasion as to eligibility in the face of the employer's rebuttal evidence. See Director, OWCP v. Greenwich Collieries, --- U.S. ----, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994).
 
 
 4
 The ALJ, after considering the evidence, found "negative" x-ray evidence as to existence of pneumoconiosis (emphasis added). In addition, the ALJ found that a 1975 ventilatory study "provided qualifying values," but neither of the two tests relied upon by Barnes met "the quality standards." Thus, Barnes did not invoke an interim presumption through ventilatory studies. (No such test was provided by claimant that had been performed within five years of the hearing.) The ALJ also found that, based upon most recent studies, the claimant did not show eligibility through blood gas studies.
 
 
 5
 After discussing the submitted medical opinions, the ALJ found these reports insufficient "to trigger the presumption pursuant to 20 C.F.R. Sec. 727.203(a)(4)...." The ALJ, therefore, denied entitlement. This determination was contrary to initial findings and conclusions made by a claims examiner in 1981. Barnes appealed to the Benefits Review Board and challenged the weight given pulmonary function evidence. The Board concluded that the ALJ's findings of fact and conclusions of law were supported by substantial evidence, rational, and consistent with applicable law. BRB # 86-2874 BLA, OWCP # xiz-og-fpxh
 
 
 6
 Barnes then moved the Board to reconsider its decision, arguing, for the first time, that the Department of Labor had not properly performed its function by not indicating that the 1975 pulmonary function study, on which he relied, was insufficient. The Board granted the motion to reconsider and remanded the case to the ALJ for re-evaluation of the pulmonary function studies. Once again, the ALJ evaluated the evidence and denied the claim upon remand and reconsideration. The ALJ found the study in question insufficient, but also, in the alternative, even if it were deemed adequate, there was not enough evidence to show entitlement.
 
 
 7
 Barnes again appealed to the Board, maintaining that the ALJ erred in weighing the pulmonary function study and medical opinion evidence. The Board affirmed the ALJ's second opinion of no entitlement.[5] In effect, the Board held that a single pulmonary study, arguably meeting the Act's standards, even if "technically correct," must also conform to applicable quality standards, and was not met in this case to establish eligibility. (Among other things, there must be a statement accompanying the study that the patient comprehended what was required and that he made a reasonable effort in the course of the study.) See Hutchens v. Director, OWCP, BRB # 81-2291 BLA, OWCP # wma-ce-uool 8 Black Lung Rep. 1-16 (1985).
 
 
 8
 It is noteworthy that Dr. Hanson, a board-certified pulmonary specialist, noted in a 1981 report that Barnes suffered mild hypertension and had a history of smoking cigarettes. Dr. Hanson found, after examination and testing, "no evidence of pulmonary dysfunction, radiographic pathology or pulmonary disability." (A board-certified radiologist read the 1981 chest x-rays as negative.) Dr. Zorn, in 1985 and 1986, confirmed these results. After the preliminary determination of eligibility, Barnes was paid almost $70,000 in black lung benefits. The Department of Labor has now requested a refund of this amount. Barnes is now eighty-one.
 
 
 9
 Barnes concedes that we review the Board's decision "for errors of law and adherence to the BRB statutory scope of review." He also concedes that the Board must affirm the ALJ's findings of fact "if supported by substantial evidence in the record considered as a whole." See West v. Director, OWCP, 896 F.2d 308, 312 (8th Cir.1990); Newman v. Director, OWCP, 745 F.2d 1162, 1164 (8th Cir.1984). This court has recently held that "[o]ur review is limited to determining whether the ALJ's decision 'was supported by substantial evidence and reached in conformance with the applicable law.' " Risher v. OWCP, 940 F.2d 327, 330 (8th Cir.1991) (citing Grant v. Director, OWCP, 857 F.2d 1102, 1105 (6th Cir.1988)).
 
 
 10
 Barnes first argues in his brief that the 1975 pulmonary function study was "validated by respondent's agent," and that it provides him a presumption under 20 C.F.R. Sec. 727.203(a)(2). In effect, Barnes relies upon something equivalent to estoppel, arguing that he was paid benefits for several years prior to the first ALJ decision denying eligibility in 1986. Barnes maintains that since a Workers Compensation Program claims examiner found in 1980 that he had "contracted a severe chronic respiratory disease diagnosed as coal workers' pneumoconiosis," that this finding, coupled with payment of benefits, in effect, "validated" the pulmonary study in question. We disagree with Barnes' contention.
 
 
 11
 Barnes concedes that it was not until 1985 that "the Department of Labor determined that ICO Corporation was the responsible party," and, thus, afforded ICO the opportunity to contest eligibility and its liability. There can be no estoppel upon ICO nor any binding effect of a claim examiner's opinion of its responsibility prior to any opportunity for ICO to challenge Barnes' eligibility and to contest its liability. The claims examiner's opinion does not "validate" the pulmonary study in dispute; rather, it concludes, without reference to any pulmonary study, that "claimant had contracted a severe chronic respiratory disease diagnosed as coal workers' pneumoconiosis." This conclusion would seem to indicate the claims examiner's reliance on x-ray studies or medical opinion evidence. In any event, the 1975 pulmonary study has never been validated as Barnes contends. The fact that the Director then chose in 1975 to pay Barnes benefits without contesting the opinion of the claims examiner as to eligibility is a matter that has no bearing on ICO's liability. The fact a non-doctor indicated that some unidentified "vent study" was "technically correct" in August of 1975 is also of no effect in binding the ALJ to conclude that a specific ventilatory study at issue met quality standards. There was no subsequent clear medical validation of the 1975 pulmonary function study in our view. There was no medical doctor's interpretation of the tracings or the procedures used in the 1975 study to verify the claimant's understanding and cooperation. Later studies indicated no eligibility based on pulmonary function studies. Compare Twin Pines Coal Co. v. U.S. Dept. of Labor, 854 F.2d 1212, 1217 (10th Cir.1988).
 
 
 12
 Barnes also argues that a single blood gas study should be sufficient to trigger a presumption of his eligibility. We, like the Board, are satisfied, however, with the reasoned analysis by the ALJ of the blood gas studies in light of the record. The Board followed its precedent in denying "invocation of the interim presumption ... pursuant to Section 727.203(a)(3)." The second appeal to the Board did not even mention this issue.
 
 
 13
 Next, Barnes argues that the "[d]irector has a duty to obtain a subsequent pulmonary function study that does meet the conforming or quality standards." In making this argument, Barnes overlooks the duty imposed upon him, not the Director, to establish his eligibility. He was represented in 1986 before the ALJ and was aware, at least by 1984, according to his attorney's statement at oral argument, that his eligibility was in serious question and that the 1975 pulmonary study was not of sufficient quality to establish an interim presumption. More than this, in 1977, another claims examiner advised Barnes that the record evidence presented was insufficient. He is charged with knowledge that two x-rays taken in 1975 were interpreted to show no evidence of pneumoconiosis. It was up to Barnes and his attorney, not the Director, to obtain medical evidence, including satisfactory pulmonary function studies, to indicate his eligibility. Newman v. Director, OWCP, 745 F.2d 1162 (8th Cir.1984), simply does not support Barnes' argument in this regard. Newman, 745 F.2d at 1164, quotes from Director, OWCP v. Rowe, 710 F.2d 251, 254 (6th Cir.1983): the Board "is limited to reviewing the ALJ's decision for errors of law and to determine whether the factual findings are supported by substantial evidence in the record reviewed as a whole."
 
 
 14
 Newman held that there is no "inference" of non-disability automatically arising "when a pulmonary function study fails to qualify a miner." Id. at 1165. Newman held further that the pulmonary function tests in that case required re-evaluation, because the ALJ had mistakenly made an "inference" of non-liability. Id. The facts in this case do not indicate that the ALJ did anything other than look at the entire record evidence of pulmonary function studies and conclude, with a satisfactory explanation based on substantial evidence, that this evidence did not establish eligibility. Barnes, or his counsel, was aware of his right to have the Department of Labor arrange a pulmonary evaluation, if one were requested. Barnes had the duty in this case to obtain satisfactory evidence, including a quality pulmonary function study, to support his claim--with financial help of the Department. He, regrettably, failed in this respect. Apparently during the late 1970's and 1980's, Barnes was not seeing a doctor for a respiratory difficulty since he produced no medical reports supporting his eligibility during this period. He produced not a single x-ray showing evidence of pneumoconiosis.
 
 
 15
 Neither do we find, as Barnes argues, that the Board erred as a matter of law in affirming the ALJ's denial of eligibility. The Board reviewed the evidence, including the pulmonary function studies, the opinions of Dr. Jewett, Dr. Hanson and Dr. Zorn, and concluded that the ALJ's findings and conclusions were "supported by substantial evidence, are rational, and are consistent with applicable law." Giving the claimant the benefit of a remedial construction of the Black Lung Benefits Act, we find no error in the decision of the Board.
 
 
 16
 In affirming the denial of Barnes' eligibility, we are mindful that he is not precluded from presenting another claim for benefits and new evidence of his eligibility after 1986. We regret that there was a lapse of about five years in this case while the Director sought to locate a responsible operator, but we cannot consider this as a factor to be weighed favorably for Barnes, who received full benefits during that period (and more).
 
 
 17
 We AFFIRM the Board's initial decision and its decision after remand for the reasons indicated.
 
 
 
 *
 THE HONORABLE HARRY W. WELLFORD, Senior Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 [1]
 Although not a factor in our decision, we note that Barnes has, since 1975, been eligible for social security benefits
 
 
 [2]
 Barnes had been working for a predecessor company of ICO for some years before 1974
 
 
 [3]
 The ALJ made his determination in 1986. Up to that point, Barnes received $69,448.90
 
 
 [4]
 Since Barnes filed a claim before 1980, the applicable regulations governing eligibility and presumptions are found in 20 C.F.R. Part 727
 
 
 [5]
 There was a procedural question about notice to ICO and timeliness of the second appeal to the Board. In view of the Board's final adverse decision to Barnes, we need not review those questions