**Cecil CAMPBELL, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 87–1975.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 1, 1988.

Decided May 11, 1988.

---

Douglas M. Carson, Fort Smith, Ark., for petitioner.

Michelle S. Gerdano, Washington, D.C., for respondent.

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

McMILLIAN, Circuit Judge.

Cecil Campbell petitions for review of the order of the United States Department of Labor Benefits Review Board (BRB) denying his claim for black lung benefits. For reversal, petitioner argues that (1) the decision of the administrative law judge (ALJ) that the medical evidence of record failed to establish a totally disabling respiratory or pulmonary impairment for purposes of invoking the interim presumption under 20 C.F.R. § 727.203(a)(4) was not supported by substantial evidence; (2) because there were qualifying and conforming ventilatory studies of record, the ALJ erred in refusing to invoke the interim presumption pursuant

to 20 C.F.R. § 727.203(a)(2); and (3) the ALJ's decision that petitioner was not entitled to benefits under 20 C.F.R. Part 410 was not supported by substantial evidence. For the reasons discussed below, we agree with petitioner's first argument, and, therefore, reverse and remand with directions that benefits be paid to petitioner.

The Federal Coal Mine Health & Safety Act of 1969, 83 Stat. 742 (codified as amended at 30 U.S.C. §§ 901–945 (1982)) (Act), establishes health and safety standards for coal mines, as well as a system of compensation for miners who are disabled as a result of pneumoconiosis (black lung disease). Because that program has been developed through several statutory enactments,[1] different rules govern claims filed during different periods of time.

In order to qualify for benefits under the Act, a miner must establish, by a preponderance of the evidence, total disability due to pneumoconiosis arising out of coal mine employment. *Mullins Coal Co. v. Director,* —— U.S. ——, 108 S.Ct. 427, 441 n. 35, 98 L.Ed.2d 450 (1987) (*Mullins Coal*); *Hon v. Director,* 699 F.2d 441, 444 (8th Cir.1983) (*Hon*). To assist in establishing these conditions of eligibility, there are a number of presumptions which may work in a claimant's favor; those relevant to the case at bar are set forth herein.

On February 15, 1973, petitioner filed a Part B[2] claim for black lung disability benefits which was denied by the Social Security Administration[3] on October 10, 1973, and again on June 8, 1979.[4] Thereafter,

---

1. *See Mullins Coal Co. v. Director,* —— U.S. ——, 108 S.Ct. 427, 429 n. 1, 98 L.Ed.2d 450 (1987) (*Mullins Coal*).

2. The Act is divided into three sections: Part A provides general findings and definitions; Part B applies to claims filed by December 31, 1972; Part C applies to claims filed after December 31, 1972. The 1972 amendments to the Act extended the filing deadline under Part B to June 30, 1973, and delayed the effective date of Part C until January 1, 1974. Claims filed between June 30, 1973, and January 1, 1974, were covered by 30 U.S.C. § 925.

3. Claims filed before July 1, 1973, were processed by the Social Security Administration (SSA) pursuant to regulations promulgated by the Secretary of the Department of Health, Edu-

cation, and Welfare (HEW). In the early years of the benefits program, the SSA denied a high number of claims because of a perceived lack of proof of totally disabling pneumoconiosis due to coal mine employment. *Mullins Coal,* 108 S.Ct. at 436. In 1972 Congress amended the Act and mandated liberalized standards; in response, the Secretary of HEW established interim regulations to ease claimants' proof burdens. *Id.*

4. Pursuant to the 1977 amendments to the Act, upon request of a claimant, the Secretary of HEW was to review all pending and previously denied Part B claims based on the evidence in the file, but taking into consideration the 1977 amendments. 30 U.S.C. § 945(a)(1). If the claim was not approved, it was to be referred to

petitioner's claim was reexamined by the Secretary of Labor[5] and, on February 21, 1980, was again denied. Petitioner then requested a formal hearing before an ALJ. The hearing was held on September 30, 1982.

At the hearing, petitioner testified that he was born on December 21, 1918, and began working in a coal mine in October 1939 as a "chunker."[6] He was so employed from that time until June 1944 when he was inducted into the army. He was discharged shortly after the end of World War II and again resumed mine employment as a chunker. He stopped working in the mines in October 1956. During his years as a chunker, he was constantly exposed to coal dust. In 1943, approximately four years after he began working as a miner, he first began experiencing shortness of breath. This condition eventually disabled him. From 1952 to the present, he has experienced fainting spells caused by his respiratory problems. He played semi-pro baseball but had to stop in 1952, when he was 34 years old, because he could no longer run from home plate to first base due to his breathing problems. After his mine employment, he worked as a machinist but was forced to leave the job, because his breathing problems caused him to "tire out" too easily. As a result of his respiratory problems, even mildly strenuous tasks cause him to gasp for breath, faint, and experience pain and numbness. Petitioner has never used tobacco.

The tests conducted in this case included five readings of three chest X-rays and three pulmonary function tests.[7] A read-ing of a June 6, 1973, X-ray by Dr. L.D. Thomas identified a slight hyperaeration consistent with asthma or emphysema. A "B" reader,[8] Dr. P. Whittlesey, opined with respect to the same X-ray, that the quality of the film was insufficient to permit reliable classification of pneumoconiosis. A second X-ray dated September 5, 1973, was read as negative by Dr. P. Rogers. A third X-ray dated April 23, 1980, was read as being not completely negative by Drs. T.G. Parker and E.N. Sargent, a "B" reader.

The first pulmonary function study was performed by Dr. Turner on July 3, 1973, and displayed an FEVl score of 3.1 and an MVV score of 115. The second pulmonary function study was performed on April 17, 1980 (Director's Exhibit 16), by Dr. W.J. Roberts and indicated an FEVl of 2.4 and an MVV of 50. The third pulmonary function study, performed on January 20, 1981, by Dr. F.L. Bradley, displayed an FEVl of 3.2 and an MVV of 33.

A medical history and pneumoconiosis examination report signed by Dr. D.R. Nichols was introduced into evidence. Dr. Nichols examined petitioner on August 23, 1979, at the Department of Labor's request. The report revealed that smoking, employment, family and individual histories were taken, and petitioner's present complaints were noted. Dr. Nichols conducted a physical examination and examined the results of an August 27, 1979, blood gas study. The doctor noted a normal electro-cardiopathy. His diagnosis pertaining to petitioner's cardiopulmonary system was "No evidence for respiratory illness."

the Secretary of Labor "with an opportunity for the claimant to present additional medical or other evidence." *Id.* § 945(a)(1)(B), (2)(B)(i).

5. In the 1977 amendments, Congress specifically instructed the Secretary of Labor to adopt regulations with criteria no more restrictive than those in 20 C.F.R. § 410.490 and to apply them to all Part B claims, including those pending or denied as of March 1, 1978. 30 U.S.C. § 945(b). In 1978 the Secretary of Labor promulgated interim regulations to carry out this congressional directive. *See* 20 C.F.R. Part 727 (1987).

6. A "chunker" is a miner who fills mine cars with coal.

7. A pulmonary function test is designed to measure the degree to which breathing is obstructed. The subject is asked to inhale and exhale as hard as possible. A record is made of the maximum voluntary ventilation (MVV) and forced expiratory volume (FEV1). The values obtained are then correlated with the subject's height in order to determine the extent of dysfunction.

8. "B" readers are radiologists who have demonstrated their proficiency in assessing and classifying X-ray evidence of pneumoconiosis by successful completion of an examination conducted by or on behalf of the Department of Health and Human Services. *Consolidation Coal Co. v. Chubb*, 741 F.2d 968, 971 n. 2 (7th Cir.1984).

A medical report dated May 5, 1980, by Dr. W.J. Roberts, petitioner's personal physician, noted petitioner's work history and physical complaints which included chest pains, shortness of breath with exertional dyspnea limiting his ability to walk over approximately three blocks without severe shortness of breath, and some repeated upper respiratory tract infections. Physical examination revealed some increased anterior posterior dimension to the chest, some scattered rhonchi bilaterally and somewhat distant breath sounds. As noted above, Dr. Roberts performed a ventilatory study on April 17, 1980. In the section for remarks and comments, it is noted, "Unable to figure flow rates for middle 50% and 75–85% due to patient exhalation length. Apparently the smaller airways are collapsing on forced exhalation. Impression—borderline obstructive and restrictive lung impairment." Stapled to the back of this study are three graphs.

A medical report by Dr. F.L. Bradley dated January 20, 1981, noted that four years after the beginning of petitioner's mine employment, petitioner reported experiencing chest complications in the form of weakness and shortness of breath. Dr. Bradley stated that physiologically, this experience was the beginning of injury to the lungs from the effects of coal dust and poisonous gases. The report further noted that the condition grew worse, and by 1956, petitioner was suffering so much with these chest complications that work was becoming very difficult. Petitioner told Dr. Bradley that his chest problems were "becoming worse all the time." Physical examination revealed the loss of elastic recoil which was noted by lack of pulmonary expansion. The percussion note was hyper-resonant and breath sounds were greatly reduced, particularly in the pulmonary areas. Dr. Bradley indicated that "[t]he spirogram was made with good cooperation and comprehension. Vital capacity predicted 4.7 liters per minute, observed 4.5 liters per minute. FEV1 3.2. MVV predicted 149 liters per minute, observed 21 liters per minute. Blood gas analysis: $pCO_2$ 35mm/Hg. $pO_2$ 84mm/Hg. These figures show overventilation, in which case, no work is possible." An X-ray showed an overall alveolar expansion, which Dr. Bradley deemed to be permanent. There was also alveolar-bronchiolar fibrosis with peribronchial fibrosis, and at the hili large brown opacities which were granulomatous deposits. The pulmonary areas displayed, in addition to fibrosis, marked and widespread emphysema. Dr. Bradley diagnosed (1) coal miners' pneumoconiosis; (2) cardiac insufficiency from coal miners' pneumoconiosis shown by history, physical, X-ray and cardiogram; and (3) cardio-respiratory impairment 100% for gainful occupation.

Last, a medical report by Dr. W.K. Webb, a specialist in pulmonary diseases, who examined petitioner on March 12, 1981, noted that petitioner stated that he experienced his first shortness of breath in approximately 1943 and had some intermittent shortness of breath up until two or three years previously, when he began having severe difficulty with his breathing. Petitioner estimated that he might be able to walk approximately a quarter of a mile on flat ground under ideal conditions, taking his time, but complained of severe dyspnea with any type of exertion. Petitioner stated he could not get down on the floor and play with his grandchild because of his breathing problems. Dr. Webb took an employment history and performed a physical examination from which he concluded that the lungs were clear to auscultation and percussion including forced expiration and that the heart revealed an occasional irregular beat. Dr. Webb reviewed chest X-rays and pulmonary function reports which, in his opinion, revealed the loss of function "much more than would be predicted by normal aging." Dr. Webb also noted a definite abnormality in the maximum voluntary ventilation of petitioner. Dr. Webb concluded, "In my examination of [petitioner] I came to the opinion that he suffers from a real disability. Since he has never smoked it is reasonable to assume that his exposure to coal dust and other noxious fumes in the mines are a contributing factor to his disability."

The ALJ considered petitioner's claim in light of Parts 727 and 410 of the regulations and concluded that petitioner was not eligible for black lung benefits. The ALJ first found that petitioner did not qualify for the interim presumption under 20 C.F.R. § 727.203(a)(2), because "there have been no qualifying pulmonary function ... studies submitted." In reviewing the medical evidence, the ALJ cited only to Director's Exhibits 43 [9] and 44,[10] with regard to which he noted, "No MVV tracings submitted." The ALJ next considered whether petitioner qualified for benefits under the interim presumption of 20 C.F.R. § 727.203(a)(4). The ALJ relied on the fact that Dr. Webb did not diagnose pneumoconiosis and refused to accept his report to show the presence of a totally disabling respiratory disease. The ALJ also found that Dr. Roberts did not establish the presence of total disability from a respiratory standpoint. The ALJ concluded that Dr. Bradley's opinion was neither documented by credible evidence nor supported by reasoned medical judgment, and that there was not sufficient other medical evidence to invoke the 20 C.F.R. § 727.203(a)(4) presumption of disability due to pneumoconiosis. The ALJ noted that the FEV1 value of 3.2 depicted by the January 1981 pulmonary function study approximated that predicted for petitioner's height and age. The ALJ stated that the MVV reported for the January 1981 pulmonary function study was invalid because of lack of effort on petitioner's part. Next, the ALJ summarily denied petitioner's claim under Part 410 of the regulations. Lastly, the ALJ stated that because petitioner's claim was filed prior to the effective date of Part 718,[11] it was not necessary to consider petitioner's claim under Part 718, and petitioner was entitled, if appropriate, only to the interim presumption of 20 C.F.R. § 727.203(a).

On administrative appeal to the BRB, petitioner argued, inter alia, that the ALJ erroneously neglected to consider Director's Exhibit 16, which, according to petitioner, included the requisite FEV1 and MVV tracings of the April 17, 1980, ventilatory study. In his brief to the BRB, respondent acknowledged that the ALJ erred in discounting the qualifying ventilatory study of April 17, 1980. Nevertheless, in its decision rejecting petitioner's contention, the BRB stated

[t]he record reveals that the April 17, 1980 pulmonary function study, Dir. Ex. 16, is not accompanied by the necessary MVV tracings, thus the study does not conform to the quality standards found at 20 C.F.R. § 410.430.... We therefore affirm the [ALJ's] finding that the April 17, 1980 pulmonary function study is insufficient to invoke the interim presumption pursuant to [20 C.F.R. § 727.203(a)(2)].

The scope of review of an ALJ's decision is limited. *Hon,* 699 F.2d at 444. If adequately supported by substantial evidence and not inconsistent with the law, the ALJ's determination is conclusive and it is immaterial that the facts permit the drawing of diverse inferences. *Parker v. Director,* 590 F.2d 748, 749 (8th Cir.1979) (*Parker*) (citations omitted). The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). On appeal, the BRB is limited to reviewing the ALJ's decision for prejudicial errors of law and to determine whether the factual findings are supported by substantial evidence in the record as a whole; the BRB is not empow-

---

**9.** Director's Exhibit 43 included Dr. Webb's medical report of May 29, 1981, Dr. Bradley's report of January 20, 1981, social security earnings information, four affidavits, and a copy of petitioner's birth certificate.

**10.** Director's Exhibit 44 is a letter dated October 13, 1981, to petitioner's counsel from a Depart-

ment of Labor claims examiner, with an enclosure of an evaluation form for a breathing test and blood gas study.

**11.** The effective date of Part 718 was April 1, 1980. 20 C.F.R. § 718.1(b).

ered to engage in a de novo review or to substitute its views for the ALJ. *Coughlan v. Director,* 757 F.2d 966, 968 n. 1 (8th Cir.1985) (citation omitted); *Parker,* 590 F.2d at 749 (citations omitted). This court's role is to assure that the BRB properly adhered to its standard of review which requires this court to examine the ALJ's factual determinations and the record.[12] *Hon,* 699 F.2d at 444.

▪ Under 20 C.F.R. § 727.203(a)(4), a miner with at least ten years of coal mine employment will be presumed to be totally disabled due to pneumoconiosis arising out of coal mine employment if "[o]ther medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment."

As noted above, the ALJ denied benefits under this section on the grounds that Dr. Webb "did not diagnose coal workers' pneumoconiosis" and refused to accept Dr. Webb's report "to show the presence of a totally disabling respiratory disease." However, 20 C.F.R. § 727.203(a)(4) requires neither a diagnosis of pneumoconiosis nor the presence of a totally disabling respiratory *disease;* rather, this subsection only requires the presence of "a totally disabling respiratory or pulmonary *impairment.*"[13] *Id.* (emphasis added). Thus, we hold that the ALJ incorrectly subjected petitioner to a more stringent standard than that required by statute.

First, the ALJ erroneously found that Dr. Webb "did not describe any abnormal respiratory findings." In his report, Dr. Webb stated, "I have reviewed [petitioner's] chest X-rays and have several reports here and they show increased interstitial markings at the bases with minimal hyperinflation and some bilateral hilar calcifica-

tions ... [and] there is a definite abnormality in the maximal voluntary ventilation." The fact that Dr. Webb did not complete his own objective tests to verify breathing dysfunction is inapposite here, where he specifically stated in his report that he reviewed previously performed pulmonary function studies of July 1973 and April 1980, as well as an exercise test including blood gas studies, and where Dr. Bradley, in his report of January 1980, specifically recommended that petitioner not be required to repeat pulmonary function testing because of cardiac hazard.

We also hold that Dr. Webb's report constitutes the "documented opinion of a physician exercising reasoned medical judgment." Dr. Webb fully documented petitioner's employment and medical history, including the fact that petitioner had never smoked. He performed a physical examination and evaluated petitioner's physical complaints, his inability to walk more than approximately a quarter of a mile on flat ground under ideal conditions, and petitioner's claim that he cannot get down on the floor and play with his grandchild because of his breathing problems. Nothing in the record suggests the doctor should not have believed petitioner's statements. As noted above, Dr. Webb also considered X-rays, exercise tests which included blood gas studies, and pulmonary function reports. He noted that in April 1980, the best FEV1 petitioner could perform was 2.4 liters which, in comparison with the pulmonary function test of July 1973, represented a loss of function more severe than would be predicted by normal aging.

▪ This court has recently held that the 20 C.F.R. § 727.203(a)(4) presumption may be invoked where tests do not indicate a pulmonary impairment but where a physical examination coupled with a medical and

---

12. Even though the scope of judicial review is limited, we are cognizant that Congress clearly intended that the black lung entitlement program be liberally construed in favor of the miners to insure compensation in worthy cases despite the extreme difficulty of proving the existence of clinically certain medical evidence. *See Bozwich v. Mathews,* 558 F.2d 475, 479 (8th Cir.1977).

13. *Compare* 20 C.F.R. § 727.203(a)(2) ("chronic respiratory or pulmonary disease") *with id.* § 727.203(a)(4) ("totally disabling respiratory or pulmonary impairment"); *id.* § 410.414(b), .454(b) ("presumption relating to respiratory or pulmonary impairment") *with id.* § 410.462 ("presumption relating to respirable disease").

employment history would indicate such an impairment. *See Ware v. Director,* 814 F.2d 514, 517 (8th Cir.1987) (*Ware*). This conclusion is clearly permitted by the Act. *Id.* Furthermore, Congress expressly permitted a finding of pulmonary impairment based solely on a doctor's reasoned medical judgment. *Id.* (citing *Bozwich v. Mathews,* 558 F.2d 475 (8th Cir.1977) (*Bozwich*)). A single reasoned medical report of a physician may be accepted to invoke the interim presumption under 20 C.F.R. § 727.203(a)(4). *Id.*

We hold that Dr. Webb's medical opinion that petitioner suffers from a "real disability" satisfies the "totally disabling impairment" requirement within the statutory meaning of 20 C.F.R. § 727.203(a)(4). Thus, we hold that the ALJ's decision is not supported by substantial evidence.

We further hold that the ALJ's decision that Dr. Bradley's opinion was not sufficient to invoke the 20 C.F.R. § 727.203(a)(4) interim presumption is not supported by substantial evidence. As previously noted, the ALJ concluded that Dr. Bradley's opinion was neither documented by credible evidence nor based upon a reasoned medical judgment. In reaching this conclusion, the ALJ first stated that the blood gas study Dr. Bradley conducted revealed no impairment in the transfer of oxygen. While it is true that petitioner's blood gas test results were not sufficient to invoke the presumption of total disability under 20 C.F.R. § 727.203(a)(3), nothing in the record suggests that the results were indicative of normal function. The failure to prove a positive does not necessarily render the negative true, and the Act does not suggest any such inference.

The ALJ stated that the FEVl value depicted by the January 1981 pulmonary function study approximated that for petitioner's height and age. We find that the ALJ's reliance on this statement to defeat petitioner's claim is inconsistent with this court's ruling in *Bozwich,* 558 F.2d at 480, which rejected the idea that an inference of non-disability automatically arises when a pulmonary function study result fails to qualify a miner for regulatory presump-

tions of total disability. *See also Peabody Coal Co. v. Director,* 581 F.2d 121, 123 (7th Cir.1978) (the mere fact that a black lung claimant's X-rays are negative and his pulmonary function studies are normal does not in itself establish that the claimant is not suffering from pneumoconiosis); *Gober v. Matthews,* 574 F.2d 772, 778 (3d Cir.1978) (where there is medical testimony that a disabling respiratory disease is present, the Secretary may not infer merely from a failure to submit qualifying X-rays and ventilatory studies that a miner is unlikely to be totally disabled because of respiratory or pulmonary disease). In the case at bar, the ALJ's analysis apparently rests on just such an inference. Moreover, 20 C.F.R. § 727.203(a)(4) does not require the submission of qualifying pulmonary function studies before the presumption of total disability may be invoked.

We hold that Dr. Bradley's report also constitutes "the documented opinion of a physician exercising reasoned medical judgment." As discussed above, Dr. Bradley fully documented petitioner's employment and medical history including shortness of breath and chest problems which petitioner stated were "becoming worse all the time." Nothing in the record suggests the doctor should not have believed petitioner's statements. In his physical examination of petitioner, Dr. Bradley found a loss of elastic recoil which was noted by lack of pulmonary expansion. The percussion note was hyper-resonant and breath sounds were greatly reduced, particularly in the pulmonary areas. There was acute tenderness at the inferior end of the xiphoid process, meaning heart injury. Dr. Bradley also considered an X-ray which he documented as showing an overall alveolar expansion, which is permanent, and alveolar-bronchiolar fibrosis with peribronchial fibrosis, and at the hili large round opacities which are granulomatous deposits. He noted marked and widespread emphysema in the pulmonary areas. The cardiac silhouette showed some rounding of both right and left ventricles and the diaphragm was flattened and depressed. Finally, Dr. Bradley conducted pulmonary function and blood gas tests. He diagnosed coal miners' pneumo-

coniosis; cardiac insufficiency from pneumoconiosis shown by history, physical, X-ray and cardiogram; and cardio-respiratory impairment 100% for gainful employment.

"Congress has recognized that tests and X-rays designed to detect pulmonary impairments caused by inhalation of coal dust are far from infallible, and, therefore, absent definitive medical conclusions, any doubts should be resolved in favor of the disabled miner...." *Ware*, 814 F.2d at 517 (citation omitted). In the present case, the results of the pulmonary function tests and X-rays were not definitive. Dr. Bradley's conclusions are not unreasonable merely because they differ from those of equivocal test results. *See id.* Thus, we hold that the ALJ's decision is not supported by substantial evidence.

█ The 20 C.F.R. § 727.203(a)(4) presumption of disability can be invoked only by establishing the qualifying facts by a preponderance of the evidence. *Mullins Coal*, 108 S.Ct. at 428–29. Thus, while we have found that there are documented and reasoned medical reports indicating total disability, before we can conclude that petitioner satisfied the 20 C.F.R. § 727.203(a)(4) requirements, we must view these reports and "other medical evidence" of record in light of the contrary report of Dr. Nichols. Dr. Nichols examined petitioner in 1979. While he found no evidence of respiratory illness, there is no indication that he reviewed any of petitioner's ventilatory studies or X-rays or conducted such tests himself, as did Dr. Roberts in 1980 and Drs. Bradley and Webb in 1981. This is particularly significant in light of the fact that pneumoconiosis is a progressive disease.

We hold that the total record overwhelmingly supports a finding of disability under 20 C.F.R. § 727.203(a)(4) and, as such, there is no need to remand for further proceedings,[14] and the decision is reversed and remanded for the payment of benefits

to petitioner from the date of his disability. *See Ware*, 814 F.2d at 517; *cf. Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.1984) (where further hearings would merely delay receipt of social security benefits, an order granting benefits is appropriate).

Because of our disposition on the issue of petitioner's entitlement to disability benefits under 20 C.F.R. § 727.203(a)(4), we do not need to discuss petitioner's remaining arguments on review.

Accordingly, we reverse and remand this case for the payment of benefits to petitioner from the date of his disability.

---

14. In our opinion, respondent did not rebut the presumption of disability which petitioner established, *see* 20 C.F.R. § 727.203(b); there is insubstantial evidence that petitioner has been doing his usual coal mine work or comparable work, that he is able to do such work, that his impairment did not arise out of his coal mine employment, or that he does not have pneumoconiosis.