**Betty YAUK, Widow of Steve Yauk, Petitioner,**

v.

**DIRECTOR, OWCP, U.S. DEPARTMENT OF LABOR, Respondent.**

**No. 87–2683.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1988.

Decided June 29, 1989.

I. John Rossi, Des Moines, Iowa, for appellant.

George R. Salem, Sol. of Labor, Donald S. Shire, Associate Sol., Barbara J. Johnson, Sylvia T. Kaser and Michelle S. Gerdano, all attys. for OWCP, Washington, D.C., for appellee.

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

McMILLIAN, Circuit Judge.

Betty Yauk petitions for review of a final decision of the United States Department of Labor Benefits Review Board (board) denying her claim for survivor's black lung benefits. For reversal, petitioner argues the administrative law judge (ALJ) incorrectly determined her husband's period of coal mine employment and erroneously refused to accept certain medical evidence. For the reasons discussed below, we reverse and remand this case with directions to award benefits.

Petitioner is the widow of Steve Yauk. In May 1973 Yauk filed a claim for black lung benefits with the Social Security Administration. For a history of the black lung benefits program, see *Pittston Coal Group v. Sebben*, 488 U.S. 105, 109 S.Ct. 414, 417–19, 102 L.Ed.2d 408 (1988). In order to establish the number of years that he had been employed in the coal mines, Yauk presented an itemized statement of earnings for the years 1937–1951 from the Social Security Administration, statements from several co-workers corroborating his claims of coal mine employment at various times between 1926 and 1951, and his own statement listing his periods of employment in various coal mines from 1926 through 1951. His claim was denied in September 1973.

In 1978 Yauk died, and in January 1979 petitioner filed an application for survivor's benefits with the Department of Labor. Yauk's claim was forwarded to the Department of Labor for review. Both claims were administratively denied on December 18, 1980, and, following reconsideration, on May 7, 1981. Petitioner requested a formal hearing on her survivor's claim. The hearing was held in June 1984.

The ALJ determined that, for purposes of eligibility under the black lung benefits program, Yauk had less than five years of coal mine employment and was thus not entitled to the interim presumption under 20 C.F.R. § 727.203(a) (1988). *In re Yauk*, No. 82–BLA–2845, slip op. at 2 (Dep't La-

bor Aug. 21, 1984). The ALJ then analyzed petitioner's claim under 20 C.F.R. Part 410 and denied petitioner benefits because she had failed to establish by a preponderance of the evidence that Yauk had pneumoconiosis (black lung disease) or that he had been totally disabled by a respiratory impairment caused by his employment in the coal mines at the time of his death. Slip op. at 3–4.

The Board affirmed the decision of the ALJ. *Yauk v. Director*, No. 84–2092–BLA (Ben.Rev.Bd. Oct. 21, 1987). This appeal followed.

"The scope of review of an ALJ's decision is limited. If adequately supported by substantial evidence and not inconsistent with the law, the ALJ's determination is conclusive and it is immaterial that the facts permit the drawing of diverse inferences." *Logsdon v. Director*, 853 F.2d 613, 615 (8th Cir.1988) (per curiam) (citations omitted).

> On appeal, the [Board] is limited to reviewing the ALJ's decision for prejudicial errors of law and to determining whether the factual findings are supported by substantial evidence in the record as a whole; the [Board] is not empowered to engage in a de novo review or to substitute its views for the ALJ.

*Hudson v. United States Department of Labor*, 851 F.2d 215, 217 (8th Cir.1988) (*Hudson*). "This court's role is to assure that the [Board] properly adhered to its standard of review which requires this court to examine the ALJ's factual determinations and the record." *Campbell v. Director*, 846 F.2d 502, 507 (8th Cir.1988) (*Campbell*) (footnote and citation omitted).

■ The threshold issue in this case is the number of years Yauk was employed in the coal mines. To be entitled to black lung benefits, petitioner must establish that Yauk was totally disabled due to pneumoconiosis at the time of his death. Because it is often very difficult to prove the existence of pneumoconiosis by clinical evidence, *see, e.g., Bozwich v. Mathews*, 558 F.2d 475, 479 (8th Cir.1977), the regulations established certain presumptions to be used in determining eligibility for benefits. Un-

der the interim regulations applicable here, a miner with at least ten years of coal mine employment who can satisfy one of several "medical requirements," such as specific results in ventilatory studies, will be presumed to be totally disabled due to pneumoconiosis arising out of coal mine employment. *See* 20 C.F.R. § 727.203(a)(2); *see, e.g., Hudson*, 851 F.2d at 217; *Campbell*, 846 F.2d at 503–07 & nn. 3, 5. The crucial precondition for application of this presumption is ten years of coal mine employment.

As noted above, the ALJ concluded that Yauk had less than five years of coal mine employment and thus was not entitled to the presumption under 20 C.F.R. § 727.203(a). Yauk's Social Security records and the statements of his co-workers covered sporadic periods at numerous places of employment, including many coal mine operations. The ALJ regarded the Social Security records as the most reliable and on the basis of these records credited Yauk with one and one-half years of coal mine employment during 1937–1941 and one month of coal mine employment during 1950–51. The ALJ also accepted the statements of Yauk's co-workers about his coal mine employment during 1926–1927 and 1932–1936, but noted that Yauk had not been employed continuously in the coal mines and had often been unemployed or employed in non-coal mine work. The Board concluded that the ALJ's method of computation was reasonable and that the ALJ reasonably relied upon the Social Security records and the statements of Yauk's co-workers.

Petitioner argues the ALJ should have applied the "125–day rule" set forth in 20 C.F.R. § 718.301(b) (1988) and credited her husband with one full calendar year of coal mine employment for each year he worked at least 125 days in a coal mine. The government agrees that the 125–day rule is a reasonable method of computation but argues that, even using the 125–day rule, petitioner cannot establish the requisite ten years of coal mine employment because petitioner failed to establish that Yauk had worked at least 125 days in the coal mines

during any of the years in question. The government argues that the record showed that Yauk had been only seasonally employed in the coal mines, usually between October and March, and that even assuming he worked during the first and last quarters of each year, Yauk could be credited with no more than seven years of coal mine employment. The government's brief does not explain how this figure was calculated. Brief for Respondent at 14.

Our research has discovered no reported case in which the 125–day rule has been used to compute coal mine employment. The 125–day rule is the converse of 20 C.F.R. § 718.301(b) which provides in part:

> If an operator or other employer proves that the miner was not employed in or around a coal mine for a period of at least 125 working days during a year, such operator or other employer shall be determined to have established that the miner was not regularly employed for a year for the purposes of this section. If a miner worked in or around one or more coal mines for fewer than 125 days in a calendar year, he or she shall be credited with a fractional year based on the actual number of days worked to 125.

Thus, if a miner can establish coal mine employment for 125 working days in a year, the miner will be credited with one year of coal mine employment. The 125–day rule is arguably more generous to the black lung claimant than the quarter method of computation. Under the quarter method of computation, Yauk had at most thirty-two quarters, or only eight years, of coal mine employment. *Cf. Hudson,* 851 F.2d at 218 & n. 6 (acknowledges 125–day rule but applied quarter method of computation used in *Shrader v. Califano,* 608 F.2d 114, 117–19 (4th Cir.1979) (one quarter credited for each calendar quarter in which miner earned at least $50)).

It is unclear from the record exactly how the ALJ calculated that Yauk had less than five years of coal mine employment. Using the 125–day rule, we conclude that the ALJ should have credited Yauk with at least ten years of coal mine employment. As noted by the ALJ, Yauk's coal mine employment during the years 1937–1951 is documented by Social Security records. Yauk should have been credited with a total of five and one-half years of coal mine employment because these records show that he worked in various coal mines at least two quarters (132 working days, allowing 22 working days per month) during calendar years 1937, 1938, 1939, and 1940, and at least one quarter (66 working days) during calendar years 1941 and 1950. Thus, under the 125–day rule, Yauk should have been credited with one year of coal mine employment per year for the years 1937, 1938, 1939, and 1940, and one-half of a year per year for the years 1941 and 1950.

Because Social Security reporting did not begin until 1937, Social Security records were not available for the years 1926–1927 and 1932–1936. The ALJ noted that Yauk's coal mine employment for these years was supported by the statements of his co-workers. These statements do not indicate which months Yauk had worked during any particular year. However, assuming Yauk worked the first and last quarter of each year (January to March, October to December), we calculate that under the 125–day rule Yauk should have been credited with at least five years of coal mine employment for calendar years 1932, 1933, 1934, 1935, and 1936.[1] Thus, under the 125–day rule, the record shows that the ALJ should have credited Yauk with a total of at least ten years of coal mine experience.

We also conclude from the record that petitioner established one of the qualifying

---

1. Given the seasonal nature of Yauk's history of coal mine employment, one might alternatively assume that Yauk probably worked from October of one year through March of the following year, for example, from October 1926 through March 1927. Even under this approach, however, Yauk should have been credited with at least five years of coal mine employment. Yauk worked one quarter in 1926, 1927, 1932, and 1936, and two quarters in 1933, 1934 and 1935. Because the 125–day rule credits the number of days worked proportionally up to 125 days, Yauk should be credited for ½ year per year for the years 1926, 1927, 1932, and 1936, and one year per year for the years 1933, 1934 and 1935, for a total of 5 years.

medical requirements by a preponderance of the evidence. *See* 20 C.F.R. § 727.203(a)(2). Petitioner submitted the results of two pulmonary function tests.[2] Three of the four values were less than the 2.5 $FEV_1$ and 100 MVV values specified in the interim regulation for an individual of Yauk's height (70" or less). In 1973 Yauk's $FEV_1$ was 1.5 and the MVV was 105; in 1974 the $FEV_1$ was 1.7 and the MMV was 70.

We also conclude that the government did not rebut the presumption of disability. *See* 20 C.F.R. § 727.203(b). The record does not show that at the time of his death Yauk had been capable of performing his usual coal mine work or comparable and gainful work, that his impairment did not arise at least in part out of his coal mine employment, or that he did not have pneumoconiosis.

■ Because the record clearly establishes that Yauk had at least ten years of coal mine employment and qualifying ventilatory studies, thus supporting the interim presumption that he was totally disabled by a respiratory impairment caused by his employment in the coal mines at the time of his death under 20 C.F.R. § 727.203(a)(2), and that the government failed to rebut the presumption, there is no need to remand for further proceedings. Accordingly, we reverse the decision of the Board and remand for payment of benefits to petitioner. *See, e.g., Hudson,* 851 F.2d at 218; *Campbell,* 846 F.2d at 509.

Because of our disposition of the interim presumption issue, we do not reach petitioner's remaining argument about the ALJ's refusal to accept certain medical evidence.

---

2. Pulmonary function tests measure the degree to which breathing is obstructed. MVV refers to maximum voluntary ventilation; $FEV_1$ refers to forced expiratory volume.